**Exhibit E**



SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
(202) 736 8000
(202) 736 8711 FAX

kirvin@sidley.com
(202) 736 8256

BEIJING
BOSTON
BRUSSELS
CHICAGO
DALLAS
GENEVA
HONG KONG
HOUSTON
LONDON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
WASHINGTON, D.C.

FOUNDED 1866

March 12, 2015

Optima Specialty Steel, Inc.
200 S. Biscayne Blvd., Suite 5500
Miami, Florida 33131-2310
Attn: Thad Florence

Re: Demand for Payment from Warren Steel

Dear Mr. Florence:

Reference is made to the receivable in the amount of $3,544,793.81 (the “Receivable”) owed by Warren Steel Holdings, LLC (“Warren Steel”) to Glacial Energy Holdings and its affiliated debtors (“Glacial”), which are the subject of a bankruptcy proceeding pending in the Bankruptcy Court for the District of Delaware (the “Court”), Case No. 14-10833 (CSS).

Our client, Vantage Commodities Financial Services I, LLC (“Vantage”), is the largest creditor of Glacial and pursuant to the enclosed settlement and Court order, has been granted standing to pursue the Receivable.

As set forth in the enclosed invoice summary, the Receivable is over nine months past due and relates to services provided by Glacial from January 27, 2014 through April 30, 2014. We understand that in August 2014, you proposed to Glacial various payment plans ranging from a plan in which Warren Steel would pay to Glacial the reduced amount of $1,772,396.90 over a period of twelve months and a plan in which Warren Steel would pay to Glacial the full $3,544,793.81 over a period of sixty months. These payment plans remain unacceptable.

Vantage hereby demands payment by Warren Steel of the full amount of the Receivable within ten (10) business days. Payment shall be made to the account set forth in the enclosed wire instructions. If payment in full is not promptly made, Vantage reserves the right to commence an action compelling payment and to seek appropriate penalties and interest.

Please contact me if you have any questions or wish to discuss.

Respectfully,

Kenneth W. Irvin

Enclosures
cc: Mony Bistritzky

Case 14-10833-CSS Doc 372 Filed 10/27/14 Page 1 of 20

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* | Chapter 11 |
| GRIDWAY ENERGY HOLDINGS, INC., *et al.*, | Case No. 14-10833 (CSS) |
| Debtors.[1] | Jointly Administered |
| | **Requested Hearing Date: November 7, 2014 at 11:00 a.m. (ET)** **Proposed Objection Deadline: November 3, 2014 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION PURSUANT TO SECTIONS 105 AND 363(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 FOR AN ORDER APPROVING AND AUTHORIZING THE WIND-DOWN TERM SHEET BY AND BETWEEN THE DEBTORS AND VANTAGE COMMODITIES FINANCIAL SERVICES I, LLC**

Gridway Energy Holdings, Inc. ("**Gridway**") and certain of its subsidiaries and affiliates, as chapter 11 debtors and debtors in possession (collectively, the "**Debtors**"), submit this motion (the "**Motion**") for entry of an order, substantially in the form attached hereto as Exhibit A (the "**Proposed Order**"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), approving the settlement embodied in the *Wind-Down Agreement Term Sheet* (the "**Settlement Agreement**") by and between the Debtors

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Gridway Energy Holdings, Inc. (5072); Glacial Energy Holdings (3292); Glacial Energy, Inc. (1189); Glacial Energy of New York (0776); Glacial Energy of New England, Inc. (1724); Glacial Energy of Maryland, Inc. (7173); Glacial Energy of California, Inc. (1795 ); Glacial Energy of Illinois, Inc. (1796); Glacial Energy of New Jersey, Inc. (8671); Glacial Energy of Pennsylvania, Inc. (9762); Glacial Energy of Texas (1517); Glacial Energy of Washington DC, Inc. (5548); Glacial Energy of Ohio, Inc. (0103); Glacial Energy of Michigan, Inc. (7110); Glacial Natural Gas, Inc. (0165); Negawatt Business Solutions (6299); Negawatt Business Solutions, Inc. (f/k/a/ Gridway Energy Partners, Inc.) (7086); Ziphany, L.L.C. (7934); and Glacial Energy VI, LLC (1142). The location of the headquarters of Glacial Energy VI, LLC is 5326 Yacht Haven Grande, Box 36, St. Thomas, VI 00802. The location of the headquarters for the remaining Debtors is 24 Massachusetts 6A, Sandwich, MA 02563.

Case 14-10833-CSS Doc 372 Filed 10/27/14 Page 2 of 20

and Vantage Commodities Financial Services I, LLC ("**Vantage**" or the "**Lender**"). In support of this Motion, the Debtors respectfully represent as follows:

**Jurisdiction and Venue**

1. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.[2]

**Background**

2. On April 10, 2014 (the "**Commencement Date**"), each of the Debtors commenced a voluntary case under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession as authorized by sections 1107(a) and 1108 of the Bankruptcy Code.

3. Information regarding the Debtors' history and business operations, their capital structure and primary secured indebtedness, and the events leading up to the commencement of the Chapter 11 Cases can be found in the *Declaration of Randy Lennan in Support of Chapter 11 Petitions and First Day Motions and Applications* (the "**First Day Declaration**").

4. By notice dated April 24, 2014, the Office of the United States Trustee for Region III (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Committee**").

---

[2] Pursuant to Local Rule 9013-1(f), the Debtors hereby confirm their consent to the entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

**A. <u>The DIP Financing Motion</u>**

5. On the Commencement Date, the Debtors filed a motion for approval of proposed post-petition DIP financing [Docket No. 9] (the "**<u>DIP Financing Motion</u>**") which contemplated, in part, financing (the "**<u>DIP Financing</u>**") in the aggregate principal amount of up to $122 million (the "**<u>DIP Financing Obligations</u>**").

6. On May 14, 2014, the Court approved the DIP Financing Motion on a consensual and final basis (which incorporated, in part, the comments of the U.S. Trustee and the Committee) and entered the *Order (Final) (I) Authorizing Debtors to Obtain Postpetition Financing, (II) Authorizing Debtors to Use Cash Collateral, (III) Granting Liens and Superpriority Claims to Postpetition Lenders, and (IV) Granting Adequate Protection to Prepetition LES Lenders* [Docket No. 197] (the "**<u>Final DIP Order</u>**").

7. Pursuant to the Final DIP Order, the Lender received, *inter alia*, (i) replacement liens on the Collateral (as defined in the Final DIP Order); (ii) superpriority administrative expense claims; and (iii) periodic cash payments equal to the amount of interest due and owing under the prepetition loan documents, "in each case subject to payment of the Carve-Out…." Final DIP Order, preamble, ¶ (d).

8. Pursuant to the Final DIP Order,

> "<u>Carve-Out</u>" means the sum of (i) all fees required to be paid to the Clerk of this Court and statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) and 28 U.S.C. § 156(c), and all fees, expenses, and disbursements payable to any professionals retained by the Debtors pursuant to 28 U.S.C. § 156(c), and (ii) in the event of an occurrence and during the continuance of an Event of Default...the "<u>Case Professionals Carve-Out</u>", comprising the sum of (A) all allowed unpaid fees, expenses, and disbursements (regardless of when such fees, expenses, and disbursements become allowed by order of the Court) for any professionals (the "<u>Case Professionals</u>") retained by the Debtors…incurred subsequent to receipt of written notice delivered by the DIP Agent or by any DIP Lender to counsel for the Debtors following the occurrence of an Event of Default expressly stating that the Carve-Out has been invoked (a "<u>Carve-Out Trigger Notice</u>") in an aggregate amount not in excess of $1,000,000 (the "<u>Post-Default</u>

> Carve-Out”), plus (B) all unpaid professional fees, expenses, and disbursements of such Case Professionals incurred prior to receipt of the Carve-Out Trigger Notice to the extent consistent with the Approved Budget and previously or subsequently allowed pursuant to an order of the Bankruptcy Court (the “Pre-Default Carve-Out”; collectively with the Post-Default Carve-Out, the “Professional Fee Carve-Out”); *provided*, *however*, that the Post-Default Carve-Out and the Pre-Default Carve-Out shall be reduced, dollar-for-dollar, by the amount of fees and expenses paid to the applicable Case Professionals (i) following delivery of the Carve-Out Trigger Notice and (ii) on account of fees and expenses incurred during the applicable Professional Fee Carve-Out Period.

Final DIP Order, at ¶ 14.

9. The Final DIP Order further provides that the DIP Superpriority Claims “shall be…junior to payments made pursuant to the Carve-Out (Final DIP Order, at ¶ 12) and the Lender’s “Adequate Protection Claims…[are] subject to payments made pursuant to the Carve-Out.” *Id.* at ¶ 12.

**B. The Sale**

10. On the Commencement Date, the Debtors filed the *Debtors’ Motion for Approval of Sale Procedures and for Related Relief* [Docket No. 13] (the “**Sale Motion**”). Pursuant to the Sale Motion, the Debtors proposed to sell substantially all of their assets (the “**Sale**”) to Vantage pursuant to a credit bid up to the amount of the DIP Financing or to such other purchaser who submits a higher and better offer pursuant to the sale and bidding procedures proposed in the Sale Motion.

11. On May 14, 2014, following a hearing on the Sale Motion, the Court entered the Order (A) Approving Bidding Procedures, Including, Without Limitation, Expense Reimbursement Provisions, (B) Approving Form and Notice of Sale, Assumption and Assignment, Including Cure Amount Calculation, (C) Scheduling Sale Hearing, and (D) Granting Related Relief [Docket No. 191] (the “**Bidding Procedures Order**”). Pursuant to the Bidding Procedures Order, the Court established the following sale timelines: Qualified Bids (as

defined in the Sale Motion) were due by June 4, 2014; an auction would be held (if necessary) on June 10, 2014; and a hearing to consider final approval of the Sale would be held on June 16, 2014.

12. The Debtors conducted an auction (the "**Auction**") on June 10 and June 11, 2014 after receiving a bid from Platinum Partners Value Arbitrage Fund LP ("**Platinum**" or the "**Buyer**"). At the conclusion of the Auction, Platinum was declared the successful bidder. Platinum's bid was presented to the Court at the June 14, 2014 sale hearing and, on June 17, 2014, the Court entered the *Order (I) Authorizing the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (II) Granting Related Relief* (the "**Sale Order**") [Docket No. 377] approving the sale of substantially all of the Debtors' assets to Platinum pursuant to an Asset Purchase Agreement by and among the Debtors and Platinum (the "**APA**").

## C. The KEIP Motion

13. Also on the Commencement Date, the Debtors filed the Motion of the Debtors for (I) Approval of Assumption of Employment Contracts Pursuant to 11 U.S.C. §§ 363 & 365, and (II) Approval of Incentive Plan Pursuant to 11 U.S.C. § 503(c)(3) (the "**KEIP Motion**") [Docket No. 25]. By the KEIP Motion, the Debtors sought to assume the employment agreements with several executives, each of which contain milestone-based incentive bonus payments payable to each executive (the "**Initial KEIP Payments**"). Subsequently, the Debtors intended to seek approval of incentive bonus payments payable to four (4) additional individuals (the "**Additional KEIP Payments**," and together with the Initial KEIP Payments, the "**KEIP Payments**"). The Debtors initially deferred the KEIP Motion pending discussions with the Committee, as discussed more fully below.

**D. The Committee Settlement**

14. Following its formation, the Committee immediately engaged with the Debtors and Vantage regarding its concerns over, among other things, the DIP Financing Motion, the Sale Motion and the KEIP Motion. Following several days of intense negotiations, the Debtors, Vantage and the Committee entered into a global settlement of the Committee's issues that allowed the DIP Financing Motion and the Sale Motion to proceed on an uncontested basis and modified the incentive payments proposed under the KEIP Motion such that they would be paid by Vantage post-closing and no estate funds would be used to fund the applicable incentive payments.

15. On June 19, 2014, the Court entered an order (the "**Committee Settlement Order**") [Docket No. 381] approving the global settlement (the "**Committee Settlement**") by and among the Debtors, Vantage and the Committee.

**E. The "Economic Closing", TSA & Platinum Claim**

16. On June 18, 2014, the "Economic Closing" of the sale of substantially all of the Debtors' assets to Platinum occurred whereby, among other things, Platinum paid the purchase price under the APA. However, in order to facilitate, among other things, Platinum's regulatory licensure process with the various jurisdictions' public utility commissions, the "Asset Transfer Closing" was deferred. In order to operate the Debtors' businesses between the Economic Closing and the Asset Transfer Closing, the Debtors and Platinum entered into a Transition Services Agreement (the "**TSA**") pursuant to which the Debtors have and will continue to provide certain services to Platinum for which Platinum is financially obligated. As of the date hereof, the Debtors continue to provide the services under the TSA.

Case 14-10833-CSS Doc 372 Filed 10/27/14 Page 7 of 20

17. Since the Economic Closing, Platinum has asserted an administrative expense claim against each of the Debtors of "no less than $5,617,612.47…." Claim No. 180, Addendum, ¶ 5. Platinum alleges that $863,064.00 of its asserted claim relates to a purchase price adjustment under the APA[3] and the balance relates to obligations of the Debtors, many of which "arose or accrued prior to the Petition Date," for (i) electric supply payments; (ii) renewable energy certificate payments; (iii) gas T&D payments; (iv) SG&A payments; and (v) sales & gross receipt tax payments." *Id.* at ¶ 8.

18. The Debtors dispute the validity of Platinum's claim and Platinum's assertion that the claim is entitled to administrative priority.

## F. Alleged Default of the DIP Financing Obligations

19. Pursuant to the Sale Order, the sale proceeds paid to the Debtors upon the Economic Closing were paid, *first*, to pay the $500,000.00 break-up fee payable to the Vantage and, *second*, to pay down the DIP Financing Obligations. Because the funds paid at closing were insufficient to pay off, in full, the DIP Financing Obligations, on June 23, 2014, the Lenders notified the Debtors that they were in default and reserved the right to terminate any funding under the post-petition financing facility. *See* DIP Credit Agreement §§ 7.1(a) and 7.3 [Docket No. 27].

[3] At the closing of the Sale, the Debtors, Platinum and Vantage entered into an agreement (the "Purchase Price Adjustment Agreement") whereby any dispute regarding the purchase price adjustment would be submitted to an independent accounting firm to make a binding decision regarding such dispute. This agreement provides that if Platinum is owed a refund on its purchase price, such funds will be paid by the Debtors out of Vantage's cash collateral, but only "to the extent such cash is not necessary to meet administrative expenses in the amounts set forth in the Approved Budget…." Purchase Price Adjustment Agreement, at p. 2. Upon information and belief, Vantage disputes the amount of Platinum's asserted claim related to the purchase price adjustment and, to date, no dispute has been submitted to an independent accounting firm for a decision.

## G. Negotiations Regarding Pre-Default Funding, the Carve-Out and Wind-down

20. Since then, the Debtors and the Lender, and their respective advisors, have engaged in extensive negotiations regarding the funding of pre-default obligations under the DIP Facility, the proper interpretation of the Carve-Out, what was and was not budgeted under the Approved Budget (as defined in the Final DIP Order) and the funding of an orderly wind-down of the Debtors' businesses and conclusion of these bankruptcy cases.

21. Over the course of several months, the Debtors and Vantage have exchanged numerous draft term sheets and financial analyses. On or about October 27, 2014, the Debtors and Vantage concluded their negotiations and agreed to the funding terms set forth in the Settlement Agreement.

## The Settlement Agreement

22. The Settlement Agreement provides for the following terms[4]:

| | | |
|---|---|---|
| **1.** | **Vantage's Funding Obligations** | Notwithstanding anything to the contrary in the Final DIP Order or other agreement between the Parties, and except as otherwise expressly set forth herein, following the payment of $4,078,862.20 (the "Final Funding Amount") by Vantage as set forth herein, (i) Vantage shall have no obligation to pay to, or for the benefit of, the Debtors, the Case Professionals, the Other Professionals and the Executives (as defined below) any additional amounts in connection with the Debtors' operations and the Chapter 11 Cases, any successor cases or otherwise, and (ii) the Carve-Out and the Professional Fee Carve-Out shall be deemed fully satisfied. The Final Funding Amount shall be comprised of the amounts set forth in paragraphs 1(a) through 1(c) and 1(e) herein below (the Parties' acknowledging that the amounts set forth in 1(d) have already previously been funded by Vantage). |
| **1(a)** | **Pre-Default Business Expenses, Fees of Other Professionals and fees of Case Professionals** | Within three business days following the Effective Date, Vantage shall wire $682,498.11 (the "Pre-Default Expenses") to the Debtors representing funding of (i) $90,000.00 in |

[4] The summary of the terms of the Settlement Agreement set forth herein is for the convenience of the Court and parties-in-interest and is qualified, in its entirety, by the terms set forth in the Settlement Agreement. If any inconsistency exists between the terms of the summary set forth herein and the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control.

| | | |
|---|---|---|
| | | accrued, unpaid Pre-Default operating expenses, which shall constitute a carve-out from Vantage's DIP Liens for the exclusive benefit of the applicable creditors, (ii) $407,498.11 in unpaid Pre-Default fees and expenses of the Other Professionals, and (iii) $185,000.00 in accrued, unpaid Pre-Default statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6). In addition to the foregoing, within three business days following the Effective Date, Vantage shall wire $607,997.83 to an account designated by the Case Professionals (which account shall be established by RustOmni solely for the receipt and distribution of such funds to the Debtors' Case Professionals and not for any other purpose) (the "Case Professional Account") representing all accrued, unpaid Pre-Default fees and expenses of the Case Professionals. RustOmni shall distribute amounts from the Case Professional Account to the Debtors' Case Professionals in accordance with the Court's *Order Establishing Procedures for Interim Compensation and Reimbursement of Professionals* [Docket No. 220] and any other orders in the Chapter 11 Cases relating to the payment of the Debtors' Case Professionals. Neither Vantage, any affiliate thereof, nor any professional advisor retained by the foregoing shall object to any requests for payment of any Pre-Default or Post-Default fees and expenses of any Case Professionals or Other Professionals. |
| **1(b)** | **Wind Down Amount** | Within three business days following the Effective Date (as defined below), Vantage shall wire $214,366.26 (the "Wind Down Amount") to the Debtors, which amount shall constitute a carve-out from Vantage's DIP Liens and represents the Debtors' good faith estimate of, and shall be used exclusively by the Debtors, to fund an orderly wind down of the Debtors' remaining operations and the Chapter 11 Cases and any other expenses the Debtors' deem necessary, in their sole discretion and in the reasonable exercise of their business judgment, for the wind down of their remaining operations and the Chapter 11 Cases through no later than December 31, 2014. |
| **1(c)** | **Funding of Debtors' Case Professional Carve-Out** | Within three business days following the Effective Date, Vantage shall wire $1,000,000.00 (as defined in the Final DIP Order, the "Post-Default Carve Out") to the Case Professional Account.<br><br>Notwithstanding anything to the contrary in the Final DIP Order or any other order of the Court or agreement between the Parties, and except as otherwise expressly set forth herein, |

| | | |
|---|---|---|
| | | the Post-Default Carve-Out shall solely be used to pay any and all (i) Post-Default fees and expenses of the Case Professionals, (ii) Post-Default fees and expenses of the Other Professionals, (iii) any Post-Default statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), and (iv) any and all Post-Default fees required to be paid to the Clerk of the Court.<br><br>Nothing set forth herein is intended to, nor shall it, affect, modify or impair the nature or priority of the Carve-Out, including, but limited to, the nature or priority of the Carve-Out as it pertains to, among other things, the DIP Superpriority Claims, the DIP Liens, the Prepetition LES Lenders' Replacement Liens or the Adequate Protection Claims granted pursuant to the Final DIP Order. |
| **1(d)** | **Funding of Committee Case Professional Fees and Funding of the Committee Settlement Fund** | In accordance with the *Order Granting Joint Motion of the Debtors and the Official Committee of Unsecured Creditors for Entry of an Order Approving Settlement and Compromise Pursuant to 11 U.S.C. § 105(a) and Fed.R.Bankr.P. 9019* (the "Committee Settlement Order") [Docket No. 381], on or about August 25, 2014, Vantage wired $1,000,000.00 (the "Committee Settlement Payment") to an account established and designated by the Debtor in full satisfaction of Vantage's funding obligations pursuant to the Committee Settlement Order (including, but not limited to, the settlement approved thereby). Notwithstanding anything to the contrary set forth herein, nothing herein is intended to, nor shall it, affect, impair, modify or waive the rights, obligations or claims of any person or entity pursuant to the Committee Settlement Order or the settlement agreement approved thereby. |
| **1(e)** | **Funding of Key Employee Payments** | In accordance with the Committee Settlement Order within three business days following the Effective Date, Vantage shall wire $1,574,000.00 to the Debtors and the Debtors shall, in turn, immediately make payments to the following individuals in the following amounts, which shall constitute full satisfaction of any Incentive Compensation (as defined in the Committee Settlement Order) owing by Vantage to the Debtors' executives (the "Executives") pursuant to any employment agreements or any Consents & Acknowledgements between Vantage and each of the respective individuals below**:**<br><br>1. Randy Lennan: $366,666.67<br>2. Phillip Spillane: $250,000.00<br>3. Carey Drangula: $250,000.00 |

Case 14-10833-CSS Doc 572 Filed 10/27/14 Page 11 of 20

| | | |
|---|---|---|
| | | 4. Andrew Luscz: $166,666.67<br>5. Bretton DeNomme: $166,666.67<br>6. Katie Perry: $133,333.33<br>7. Clarence Arthur: $67,333.33<br>8. Steve Jakab: $96,666.67<br>9. Thomas Frederiksen: $76,666.67 |
| **2.** | **9019 Motion** | Following the execution of the Agreement and as a condition precedent to the Effective Date (as defined below), the Debtors shall (i) promptly file a motion in the Chapter 11 Cases seeking approval of the Agreement, (ii) request an expedited hearing on the motion, and (iii) prosecute such motion in good faith. |
| **3.** | **Effectiveness and Conditions Precedent** | The Agreement shall become effective (the “Effective Date”) only upon the entry of an order by the Court in the Chapter 11 Cases, in form and substance reasonably satisfactory to the Parties, authorizing the Debtors to enter into the Agreement. |
| **4.** | **Derivative Standing** | As of the Effective Date, Vantage shall have derivative standing to pursue (i) any claims held by the Debtors’ estates against Gary Mole, including without limitation, claims for breaches of fiduciary duties, fraud, and conversion, and (ii) that certain receivable in the approximate amount of $3,544,793.81 owed by Warren Steel Holdings LLC to the Debtors (collectively, the “Actions”). Notwithstanding anything to the contrary herein, in the Final DIP Order or any other order of the Court or agreement between the Parties (i) Vantage shall be solely responsible for any and all fees and expenses incurred in connection with the investigation and pursuit of the Actions, (ii) no part of the funding agreed to herein shall be utilized in connection therewith, (iii) if and to the extent the Debtors incur fees and expenses in connection with Vantage’s investigation and/or pursuit of any Actions, Vantage shall provide separate funding for such fees and expenses, (iv) Vantage will be separately responsible to pay, when incurred, all reasonable costs and expenses associated with any Debtor employee whose assistance Vantage requests in connection with the investigation or pursuit of any Action against Gary Mole and, with respect to the investigation or pursuit of any Action against Warren Steel, any and all costs and expenses in excess of the amounts set forth in the line item titled “Collection Costs of Warren Steel” on Exhibit A hereto, including a *pro rata* amount of the employee’s salary (plus all associated taxes) which *pro rata* amount shall be based upon (a) the number of hours the employee spends assisting Vantage, as compared to (b) the total of number of hours the employee works during the applicable pay period, |

| | | |
|---|---|---|
| | | and (v) to the extent that any Action or motion related thereto is pending when the Debtors are prepared, in their sole and absolute discretion, to close, dismiss or convert the Chapter 11 Cases, Vantage shall be solely responsible for all costs, expenses and fees incurred in maintaining the pendency of the Chapter 11 Cases, (any and all such fees and expenses of the Debtors as described in (iii) through (v) above, the "Litigation Add On Expenses").<br><br>For the avoidance of doubt, Vantage shall have the right but not the obligation to pursue the Actions and shall have the right to settle the Actions, in consultation with the Debtors. Nothing set forth herein shall constitute an admission of or representation by the Debtors regarding the amount of the receivable that may be owed by Warren Steel Holdings, LLC or that any Actions exist against Gary Mole. |
| **5.** | **Proceeds** | All proceeds from the Actions, the claims underlying the Actions, or any settlements related thereto, in each case net of any accrued unpaid Litigation Add On Expenses, shall be: (i) *first*, paid by the Debtors to Vantage in satisfaction, on a dollar-for-dollar basis, of the DIP Obligations (as defined in Final DIP Order); and (ii) *second*, to the extent any proceeds remain following the satisfaction of the DIP Obligations, deposited by the Debtors in an escrow account as cash collateral of the Prepetition LES Lenders (as defined in the Final DIP Order) or the Swap Counterparty (as defined in the Final DIP Order), to be disbursed to the Prepetition LES Lenders or Swap Counterparty in accordance with any further order(s) of the Court. |
| **6.** | **Discovery and Document Retention** | The Debtors shall (i) provide to Vantage, within fourteen (14) calendar days of any reasonable request by Vantage, all reasonably identifiable and accessible non-privileged documentation in the Debtors' possession, including, without limitation, information relating to the Actions and the information held by Epiq eDiscovery Solutions on behalf of the Debtors, and (ii) make a representative telephonically available for questioning by Vantage's attorneys regarding all non-privileged facts and circumstances relating to the Actions that are known to such representative. Thereafter, the Debtors shall (i) comply with Vantage's reasonable requests for any additional documentation, (ii) provide Vantage advance notice of any meaningful destruction or deletion of documentation and a reasonable opportunity to review such documentation, and (iii) otherwise cooperate with respect to Vantage's efforts in the Actions or any investigation by Vantage related to the |

| | | |
|---|---|---|
| | | Actions. Vantage shall pay, when incurred, all reasonable costs and expenses associated with any Debtor employee whose assistance Vantage requests in connection with this Discovery and Document Retention section of the Agreement, including a *pro rata* amount of the employee's salary (plus all associated taxes) which *pro rata* amount shall be based upon (a) the number of hours the employee spends assisting Vantage, as compared to (b) the total of number of hours the employee works during the applicable pay period. |
| **7.** | **Gary Mole Discovery** | The Debtors shall not interfere with any efforts by Vantage to seek discovery from Gary Mole in the Chapter 11 Cases or otherwise. The Debtors shall also provide Vantage reasonable assistance in determining Gary Mole's whereabouts and the identity of any individual and/or law firm that currently provides legal counsel to Gary Mole, if known. |
| **8.** | **Binding on Successors** | The Agreement shall be binding upon the Parties and their successors and assigns, including, in the case of the Debtors, any trustee appointed in the event that the Chapter 11 Cases are converted to a proceeding under Chapter 7 of the Bankruptcy Code. |
| **9.** | **Right to Object** | For the avoidance of doubt, Vantage at all times shall remain a party in interest in the Chapter 11 Cases or any successor cases and have the right to be heard regarding, or object to, any matter in the Chapter 11 Cases or any successor cases. |
| **10.** | **Preservation of Claims Under Sale Order** | Nothing in this Agreement is intended to, nor shall it, shall release any claim asserted, or which can be asserted, by any person or entity relating to the *Order (I) Authorizing the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief* [Docket No. 377], the Asset Purchase Agreement (the "APA") approved by thereby or any of the transactions approved therein. |
| **11.** | **Preservation of Claims Under DIP Order** | Platinum Partners Value Arbitrage Fund LP ("Platinum") has filed an administrative claim against each of the Debtors in the amount of $5,617,612.47 pertaining to an alleged purchase price adjustment and certain alleged financial obligations of the Debtors that Platinum alleges to have performed related to, among other things, electric supply payments, renewable energy certificate payments, gas "T&D" payments, "SG&A" payments and sale & gross receipt taxes, as may be amended from time-to-time. Notwithstanding |

| | | |
|---|---|---|
| | | anything to the contrary in this term sheet, if the Court rules that (i) the Debtors are liable with respect to the Platinum Claim, and (ii) such liability arose Pre-Default, nothing herein shall be deemed to constitute a waiver or release of any rights the Debtors' have to seek funding of such amounts to the extent in compliance with (and subject to any limitations set forth in) the Final DIP Order and/or the Approved Budget. |
| **12.** | **Releases** | Other than as set forth herein, upon the occurrence of the Effective Date, each of the Debtors and the Case Professionals, on behalf of themselves, any estates, and any successors and assigns, expressly release, discharge and waive, unconditionally and irrevocably, any claims, counterclaims, defenses, rights of setoff, debts, liens, losses, demands, damages (whether general, special or punitive), liabilities, obligations, judgments, executions, debts, costs and causes of action of whatever nature, whether asserted or unasserted, fixed or contingent, known or unknown, suspected or unsuspected, foreseen or unforeseen at the present time and whether based on contract, tort, statute or other legal or equitable theory of recovery, unsecured, secured, priority, administrative or otherwise, that the Debtors or the Case Professionals may have arising out of, connected with or in any way relating to the Debtors or their Chapter 11 Cases against Vantage, its affiliates, or its officers, directors, shareholders, partners, members, employees, agents, servants, counsel, representatives, participants, or any successors or assigns of any or all of the foregoing.<br><br>Other than as set forth herein, upon the occurrence of the Effective Date, each of Vantage and any affiliates, successors and assigns, expressly release, discharge and waive, unconditionally and irrevocably, any claims, counterclaims, defenses, rights of setoff, debts, liens, losses, demands, damages (whether general, special or punitive), liabilities, obligations, judgments, executions, debts, costs and causes of action of whatever nature, whether asserted or unasserted, fixed or contingent, known or unknown, suspected or unsuspected, foreseen or unforeseen at the present time and whether based on contract, tort, statute or other legal or equitable theory of recovery, unsecured, secured, priority, administrative or otherwise, that Vantage and any affiliates, successors and assigns may have arising out of, connected with or in any way relating to the Debtors or their Chapter 11 Cases against the Debtors, the Case Professionals and each of their officers, directors, shareholders, partners, members, employees, agents, servants, counsel, representatives, |

| | | |
|---|---|---|
| | | participants, or any successors or assigns of any or all of the foregoing.<br><br>For the avoidance of doubt, this section shall not release any claims or causes of action that Vantage, the Debtors, the Case Professionals, or any affiliates thereof may have against Gary Mole. |

**Relief Requested**

23. By this Motion, and in accordance with sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtors respectfully request that the Court enter an Order (i) approving the Settlement Agreement substantially in the form attached hereto and (ii) authorizing the Debtors to take any and all actions necessary to effectuate the Settlement Agreement.

**Basis for Relief Requested**

24. Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The Third Circuit has enumerated four factors that should be considered in determining whether a settlement should be approved. The four enumerated factors are "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *accord Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that the *Martin* factors are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor).

25. The decision to approve a settlement "is within the sound discretion of the bankruptcy court." *In re World Health Alternatives*, 344 B.R. 291, 296 (Bankr. D. Del. 2006);

Case 14-10833-CSS Doc 572 Filed 10/27/14 Page 16 of 20

*see also In re Neshaminy Office Bldg. Assoc.*, 62 B.R. 798, 803 (E.D. Pa. 1986), *cited with approval in In re Martin*, 91 F.3d 389 at 393. The bankruptcy court should not substitute its judgment for that of the debtor. *See In re Neshaminy*, 62 B.R. at 803. The bankruptcy court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvas the issues to see whether the settlement falls below the lowest point in the range of reasonableness. *See In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *see also In re World Health Alternatives*, 344 B.R. at 296 ("[T]he court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities." (internal citations and quotations omitted)).

26. With respect to the Pre-Default Expenses (as defined in the Settlement Agreement) and the Wind Down Amount (as defined in the Settlement Agreement), which amounts have been carved out from the Lender's DIP Liens (as defined in the Final DIP Order) and are for the exclusive benefit of the applicable creditors, numerous Delaware decisions have held that a secured creditor may relinquish a portion of its collateral for certain uses and that such funds are not estate property and are not available to any creditors other than the intended beneficiaries. *See In re Kainos Partners Holding Company LLC*, Case No. 09-12292 (Bankr. D. Del. Apr. 1, 2010) (approving a settlement that included a carve out from a secured creditor's lien for the exclusive benefit of certain unsecured creditors); *In re PSA Successor Corp.*, Case No. 04-13030 (Bankr. D. Del. Feb. 10, 2006) (approving a settlement that included a carve out from a secured creditor's lien for the exclusive benefit of certain unsecured creditors); *In re World Health Alternatives, Inc.*, 344 B.R. at 297 (approving a settlement and stating that the "payout to general unsecured creditors is a carve out of the secured creditor's lien and not estate property" that offends any priority rules); *see also In re SPM Manufacturing Corp.*, 984 F.2d

1305 (1st Cir. 1993). The terms set forth in the Settlement Agreement are similar to such case law, as here the Lenders are agreeing to release certain of their collateral for a specific use by the estate, and are otherwise agreeing to fund certain amounts in settlement of disputes between the Lenders and the Debtors.

27. The Settlement Agreement and the transactions contemplated therein were the product of extensive, arm's length negotiations between the parties and their respective representatives, represent a comprehensive resolution of the parties' disputes, and provide substantial benefits to the Debtors' estates.

28. Since the default on June 23rd, the Debtors have had no ability to pay pre-default or post-default business expenses or fund the costs of administering these chapter 11 cases and the attendant obligations related thereto. Indeed, as noted in the recently-filed *United States Trustee's Objection to the Debtors' Motion for Order Further Extending the Exclusive Periods Pursuant to Section 1121(d) of the Bankruptcy Code* [Docket No. 559], the Debtors lack even the most basic funding to comply with their reporting requirements to the U.S. Trustee and to pay the necessary quarterly U.S. Trustee fees. The Debtors have additionally lacked the wherewithal to fund accrued and Court-approved fees and expenses of its professional advisors and the court-appointed claims agent. This lack of funding has inhibited the Debtors' ability to comply with their obligations under the Committee Settlement, which requires that the Debtors pursue a sale of the assets of Ziphany, L.L.C. for the benefit of the Committee's constituents.

29. If the Settlement Agreement is approved, the Debtors will be able to, among other things, fund pre-default operational expenses of the Debtors' businesses that have accrued and to fund an orderly wind-down of their businesses, including the sale of the assets of Ziphany, L.L.C. in accordance with the terms of the Committee Settlement. The pre-default Carve-Out will be funded in an amount that has been agreed to by each of the professionals to

receive payments thereunder – including the claims agent – all of which have agreed to a reduction in the amount of their fees in order to resolve the ongoing funding issue. Also, the accrued U.S. Trustee fees will be paid in full. Under the Settlement Agreement, the KEIP Payments will be made in full, without delay. And the Settlement Agreement provides that Vantage will fully fund the $1 million post-default Carve-Out, which funds will be used exclusively for the payment of professional fees and expenses, U.S. Trustee Fees and the fees and expenses of the court-appointed claims agent.[5] Lastly, the Settlement Agreement provides for the funding of approximately $215,000 to be used exclusively to fund the post-default wind-down of the Debtors' business and these cases.

30. Absent the proposed settlement, the Debtors have only two options. First, the Debtors could litigate with Vantage regarding the parties' differing views over their rights under the Final DIP Order. Any benefit to the Debtors' estates in engaging in such litigation is highly speculative and, as noted above, there is simply no funding for such a strategy. Alternatively, the Debtors could convert these cases to a chapter 7. However, doing so does not resolve the immediate or longer-term funding needs of these estates. Instead, the Settlement Agreement allows the pre-default funding to occur that will essentially bring the estate current on business and estate administration expenses through the default date, will fund the fees and expense of the professional advisors since the default date and through a reasonable wind-down period, will eliminate the pending KEIP Payment claims of the former and current executives,

[5] As noted in the Settlement Agreement, the funding of U.S. Trustee Fees, the "Other Professionals" and the "Case Professionals (each as defined in the Settlement Agreement) under the Settlement Agreement will not change the nature or priority of such funding under the terms of the Final DIP Order. Accordingly, Vantage's superpriority administrative expense claims and DIP liens remain subject to payment of the funding under the Settlement Agreement for the benefit of the U.S. Trustee fees, the claims agent and certain professional advisors to the debtor. *See* Section A, *supra*.

and will allow for funding of an orderly wind-down. This is an extremely good result for a case that is otherwise administratively insolvent.

31. In light of the above, the Debtors believe that (i) the Settlement Agreement is fair, equitable, and in the best interests of their creditors and their estates; (ii) the Settlement Agreement represents an exercise of their sound business judgment; and (iii) the Settlement Agreement should be approved pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

**Notice**

32. No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion will be provided by facsimile, electronic mail transmission, overnight delivery and/or hand delivery to the following parties: (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) counsel to Vantage; (iv) counsel to Platinum; and (v) the Internal Revenue Service.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Proposed Order and (b) grant such other and further relief as the Court may deem just and proper.

Dated: October 27, 2014
Wilmington, Delaware

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Joseph M. Barry*
Michael R. Nestor (No. 3526)
Joseph M. Barry (No. 4221)
Donald J. Bowman (No. 4383)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: 302.571.6600
Facsimile: 302.571.1253

-and-

Alan M. Noskow (*pro hac vice*)
Mark A. Salzberg (*pro hac vice*)
PATTON BOGGS LLP
2550 M St. NW
Washington, DC 20037
Telephone: 202.457.6000
Facsimile: 202.457.6315

*Co-counsel for the Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* | Chapter 11 |
| GRIDWAY ENERGY HOLDINGS, INC., *et al.*, | Case No. 14-10833 (CSS) |
| Debtors.[1] | Jointly Administered |
| | **Ref. Docket No.: 572, 592** |

**ORDER PURSUANT TO SECTIONS 105 AND 363(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 APPROVING AND AUTHORIZING THE SETTLEMENT AGREEMENT BY AND BETWEEN DEBTORS AND VANTAGE COMMODITIES FINANCIAL SERVICES, I, LLC**

Upon consideration of the motion (the "**Motion**")[2] of Gridway Energy Holdings, Inc. ("**Gridway**") and certain of its subsidiaries and affiliates, as chapter 11 debtors and debtors in possession (collectively, the "**Debtors**"), for entry of an order pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 approving the Settlement Agreement (attached hereto as Exhibit 1) entered into by and between Debtors and Vantage Commodities Financial Services I, LLC ("**Vantage**" or "**Lender**"), as more fully described in the Motion; and upon consideration of the Motion; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required; and it appearing that the Court

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Gridway Energy Holdings, Inc. (5072); Glacial Energy Holdings (3292); Glacial Energy, Inc. (1189); Glacial Energy of New York (0776); Glacial Energy of New England, Inc. (1724); Glacial Energy of Maryland, Inc. (7173); Glacial Energy of California, Inc. (1795 ); Glacial Energy of Illinois, Inc. (1796); Glacial Energy of New Jersey, Inc. (8671); Glacial Energy of Pennsylvania, Inc. (9762); Glacial Energy of Texas (1517); Glacial Energy of Washington DC, Inc. (5548); Glacial Energy of Ohio, Inc. (0103); Glacial Energy of Michigan, Inc. (7110); Glacial Natural Gas, Inc. (0165); Negawatt Business Solutions (6299); Negawatt Business Solutions, Inc. (f/k/a/ Gridway Energy Partners, Inc.) (7086); Ziphany, L.L.C. (7934); and Glacial Energy VI, LLC (1142). The location of the headquarters of Glacial Energy VI, LLC is 5326 Yacht Haven Grande, Box 36, St. Thomas, VI 00802. The location of the headquarters for the remaining Debtors is 24 Massachusetts 6A, Sandwich, MA 02563.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion and provided for herein is in the best interest of the Debtors, their estates and creditors; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED.

2. The Settlement Agreement, a copy of which is attached hereto as Exhibit 1, is approved in its entirety pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

3. The Debtors are authorized and empowered to take any and all actions necessary to carry out, effectuate, or otherwise enforce the terms, conditions, and provisions of the Settlement Agreement.

4. Nothing in this Order, the Debtors' Motion and/or the Settlement Agreement shall be deemed to waive, release, limit or otherwise impair any rights, remedies, claims, causes of action or defenses, whether direct or derivative, held or asserted by Platinum Partners Value Arbitrage Fund LP and/or its designee as against the Debtors, their estates, Vantage and EDF Trading North America, LLC. The Debtors, Vantage and EDF Trading North America, LLC reserve their respective rights and defenses in connection therewith, including to allege that such claims or causes of action were released or waived under the Final DIP Order, the Sale Order, or the Committee Settlement Order, which orders remain in full force and effect. Notwithstanding the foregoing, and other than as to the Wind Down Amount (as such term is

defined and described in the Debtors' Motion and the Settlement Agreement), Platinum Partners Value Arbitrage Fund LP and its designee waive the right to seek recovery or disgorgement of any portion of the Final Funding Amount (as such term is defined and described in the Debtors' Motion and the Settlement Agreement).

5. For the avoidance of doubt, notwithstanding the first sentence in Section 1(d) of the Settlement Agreement, nothing in this Order or the Settlement Agreement shall be construed or deemed to affect, impair, modify or waive the rights, obligations or claims of any person or entity pursuant to the Committee Settlement Order, including but not limited to Vantage's (i) additional funding obligations to the Settlement Fund (as defined in the Committee Settlement) to the extent the Secondary Sale Net Proceeds (as defined in the Committee Settlement) are less than $300,000; and (ii) rights or obligations as set forth in the "Secondary Sale Net Proceeds" and "Amount to be Contributed to Fund Settlement of the Eligible Administrative Claims, Including Amounts from Secondary Sale" provisions of the Committee Settlement.

6. For the avoidance of doubt, notwithstanding Section 1(b) of the Settlement Agreement which provides for funding for the wind down of the Debtors' "remaining operations and the Chapter 11 Cases through no later than December 31, 2014", nothing in this Order or the Settlement Agreement shall be construed or deemed to affect, impair, modify or waive any rights of the Committee, including the right to oppose any motion to dismiss or convert these Chapter 11 Cases on any grounds (including but not limited to that the Committee requires additional time beyond December 31, 2014 to fully implement the Committee Settlement and proceed with distributions from the Committee Settlement Fund to the holders of allowed Eligible Administrative Claims).

7. The terms of Exhibit 2 hereto are incorporated herein by reference and shall constitute a part of this Order as if fully written herein.

8. This Court shall retain jurisdiction to hear any and all disputes arising out of the interpretation or enforcement of this Order

Dated: November 24, 2014
Wilmington, Delaware

Christopher S. Sontchi
United States Bankruptcy Judge

**Glacial – Warren Steel Invoice Summary**

| Invoice Number | Invoice Date | Due Date | Service Period Start | Service Period End | Current Energy Charges | Monthly True-Up | Late Fees | Total Invoice Amount |
|---|---|---|---|---|---|---|---|---|
| 35498369-9400107 | 2/5/2014 | 2/25/2014 | 1/27/2014 | 1/31/2014 | $ 478,881.83 | $ - | $ - | $ 478,881.83 |
| 35498369-9400108 | 2/5/2014 | 2/25/2014 | 2/1/2014 | 2/2/2014 | $ 64,584.99 | $ - | $ - | $ 64,584.99 |
| 35498369-9400109 | 2/12/2014 | 3/4/2014 | 2/3/2014 | 2/9/2014 | $ 352,063.83 | $ 441,872.38 | $ - | $ 793,936.21 |
| 35498369-9400110 | 2/19/2014 | 3/11/2014 | 2/10/2014 | 2/16/2014 | $ 370,269.36 | $ - | $ - | $ 370,269.36 |
| 35498369-9400111 | 2/26/2014 | 3/18/2014 | 2/17/2014 | 2/23/2014 | $ 212,697.26 | $ - | $ - | $ 212,697.26 |
| 35498369-9400112 | 3/5/2014 | 3/25/2014 | 2/24/2014 | 2/28/2014 | $ 274,239.65 | $ - | $ 14,218.68 | $ 288,458.33 |
| 35498369-9400113 | 3/5/2014 | 3/25/2014 | 3/1/2014 | 3/2/2014 | $ 6,696.56 | $ - | $ - | $ 6,696.56 |
| 35498369-9400114 | 3/12/2014 | 1/1/2014 | 3/3/2014 | 3/9/2014 | $ 400,717.93 | $ - | $ - | $ 400,717.93 |
| 35498369-9400115 | 3/19/2014 | 4/8/2014 | 3/10/2014 | 3/16/2014 | $ 261,290.07 | $ 37,879.29 | $ - | $ 299,169.36 |
| 35498369-9400116 | 3/26/2014 | 4/15/2014 | 3/17/2014 | 3/23/2014 | $ 198,902.18 | $ - | $ - | $ 198,902.18 |
| 35498369-9400117 | 4/2/2014 | 4/22/2014 | 3/24/2014 | 3/30/2014 | $ 170,183.05 | $ - | $ - | $ 170,183.05 |
| 35498369-9400118 | 4/9/2014 | 4/29/2014 | 3/31/2014 | 3/31/2014 | $ 34,569.75 | $ (25,676.84) | $ 39,849.70 | $ 48,742.61 |
| 35498369-9400119 | 4/9/2014 | 4/29/2014 | 4/1/2014 | 4/6/2014 | $ 16,840.02 | $ - | $ - | $ 16,840.02 |
| 35498369-9400120 | 4/16/2014 | 5/6/2014 | 4/7/2014 | 4/13/2014 | $ 18,436.49 | $ - | $ - | $ 18,436.49 |
| 35498369-9400121 | 4/23/2014 | 5/13/2014 | 4/14/2014 | 4/20/2014 | $ 24,616.91 | $ - | $ - | $ 24,616.91 |
| 35498369-9400122 | 4/30/2014 | 5/20/2014 | 4/21/2014 | 4/27/2014 | $ 19,976.51 | $ - | $ - | $ 19,976.51 |
| 35498369-9400123 | 5/7/2014 | 5/27/2014 | 4/28/2014 | 4/30/2014 | $ 9,810.55 | $ - | $ - | $ 9,810.55 |
| 35498369-9400124 | 5/21/2014 | 6/10/2014 | | | $ - | $ (16,961.12) | $ 51,503.06 | $ 34,541.94 |
| 35498369-9400125 | 6/11/2014 | 7/1/2014 | | | $ - | $ 46,927.35 | $ - | $ 46,927.35 |
| | | | | | **$ 2,914,776.94** | **$ 484,041.06** | **$ 105,571.44** | **$ 3,504,389.44** |

| | |
|---|---|
| Unpaid Balance Prior to 1/27/14 | $ 40,404.37 |
| **Total Outstanding Per Last Invoice** | **$ 3,544,793.81** |

**Wire Instructions**

First National Bank of Central Texas – Waco, Texas

Beneficiary: Glacial Energy Estate Account
Account No.: 40036931
ABA No.: 111903245
Attn: Anna Pavelka